UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JASON CASTLE,

                 Plaintiff,

    v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

Case No.  2:16-cv-02412-GWF

**ORDER**

**Re:  Motion for Reversal and/or
Remand (ECF No. 19)**

This case involves judicial review of an administrative action by the Commissioner of Social Security denying Plaintiff's claim for disability benefits under Title II of the Social Security Act.  Plaintiff filed his Motion for Reversal and/or Remand (ECF No. 19) on April 27, 2017.  The Commissioner filed her Cross-Motion to Affirm (ECF No. 22) and Opposition to Plaintiff's Motion to Remand (ECF No. 22) on June 29, 2017.

**BACKGROUND**

**A.    Procedural History**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on March 26, 2012.  Administrative Record ("AR") 234.  He also filed a Title XVI application for supplemental security income on May 9, 2012.  In both applications, Plaintiff alleged that his disability began on June 1, 2011.  AR 234-236.  The Social Security Administration denied Plaintiff's claims initially on May 8, 2013 and upon reconsideration on September 11, 2013.  AR 175, 186.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was conducted on November 17, 2014.  AR 192.   Plaintiff and a vocational expert testified at the hearing.  The ALJ issued her decision on February 27, 2015 and

concluded that Plaintiff was not disabled at any time between the date his applications were filed and the date of the decision. AR 52. The Appeals Council denied his request for review on August 11, 2016. AR 2-8. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

## B. Factual Background

Plaintiff's motion for reversal and/or remand is limited to whether the ALJ improperly rejected the opinion of his treating psychiatrist, Dr. Derald Farrimond, who provided a mental medical source statement on October 28, 2014; and whether the ALJ adequately considered the opinion of Dr. L.D. Larson, a psychologist, who performed a psychological evaluation of Plaintiff on March 28, 2013. Accordingly, the Court will focus on the evidence relating to Plaintiff's mental condition, and will discuss his physical impairments to the extent necessary to understand Plaintiff's alleged mental impairments and the ALJ's determination that he was not disabled.

### 1. Plaintiff's Disability Reports and Hearing Testimony.

Plaintiff was born on November 3, 1978. He is 6'1" tall and weighed approximately 190 pounds at the time of his application. AR 105. He is a high school graduate. Plaintiff is married and has 5 children. At the time of the hearing, his two oldest children resided elsewhere. His three youngest children lived with Plaintiff and his second wife. AR 65-66.

In his April 10, 2012 disability report, Plaintiff listed the following conditions that limit his ability to work: "Diagnosed with a mood disorder;" "Depression," and "Back Pain." AR 276. Plaintiff stated in a May 20, 2012 function report that he had problems remembering things and forgot to do chores and pay bills. AR 293, 300. His wife reminded him to take care of his personal appearance and to take his medicine. He would forget written or spoken instructions. AR 298. His son helped him perform chores. AR 294. He did not cook meals. His wife shopped for groceries and he went out for meals about once a month. He did not go outside often and had a problem with sunlight. AR 295-96. It hurt to move, walk, and sit. The left side of his body was numb and ached. He could not drive. He slept or lay down most of the time. When stressed, he would shake, sweat, or vomit. He had difficulty lifting, squatting, bending,

standing, reaching, walking, sitting, kneeling, climbing stairs, completing tasks, concentrating, understanding, following instructions, and getting along with others. He did not like people and avoided authority figures. AR 297-99.

Plaintiff's wife stated in a May 20, 2012 third-party function report that Plaintiff had memory problems and a hard time concentrating. He became extremely agitated. Plaintiff experienced back pain and had numbness on one side of his body. AR 285. He was no longer able to work in construction because of his back pain, and he was no longer able to operate machinery due to his medication. He slept for days and also stayed awake for days. AR 286. Ms. Castle reminded him to care of his personal hygiene and take his medicine. He wore the same clothes for days, rarely bathed, shaved about once a month, and went days without eating. He rarely performed chores. Plaintiff met basic requirements for helping with their children. Ms. Castle stopped encouraging him to go outside because he became aggressive towards other people. He had one friend who visited him. AR 287-89. Plaintiff had a poor memory and often did not know what day it was. When he started a task, he rarely finished it. He did not have any hobbies. He isolated himself from others. Plaintiff believed that people were talking about him. AR 290.

Plaintiff's wife completed another third-party function report on August 17, 2013. She stated that Plaintiff's depression had become worse due to his physical pain and feelings of worthlessness. He was paranoid and distrusted authority figures. His aggressive behavior toward others had also worsened. AR 326. In his August 17, 2013 function report, Plaintiff stated that when he woke up, he took his medications, and then sat and cried. AR 327. When he was challenged, he hurt other people. He was required to take anger management classes. AR 332. He could not calm down when he was stressed. He was unable to follow written or spoken instructions because he forgot them.

Plaintiff testified at the hearing that he worked as general manager at Domino's Pizza for two and a half years and oversaw ordering, delivering, hiring, firing, and overseeing all operations of the restaurant. He had to lift about 40 to 50 pounds in that job. AR 67. He also worked at Papa John's Pizza and had the same type of duties. In 2002, he worked as a long-

distance salesman.  AR 68.  He worked as a car salesman for less than 6 months.  In 2003, he worked as a truck loader and was required to lift about 70 pounds.  AR 69.  From 2004 to 2005, he performed freeform concrete work and was required to lift about 60 pounds.  AR 70.  He worked as a foreman for an underground construction company from 2005 to 2006 and as a foreman for another construction company from 2006 to 2008.  He was required to lift 60 pounds in both jobs.  AR 71.  He worked on and off as a process server from 2005 to 2009.  AR 73, 301.  In 2008, he worked as a furnace assistant and kiln furnace operator.  In this job, he was required to lift 40 pounds and stand 10 to 12 hours a day.  AR 72-73.

Plaintiff testified that he was unable to perform any work because he has extreme difficulty waking up, had low back problems, and was mentally compromised.  He could barely stand or walk for three to seven days during a month and had trouble carrying loads of 15 pounds or more.  He became nauseous and could not leave his home.  AR 74-75.  He occasionally drove an automobile.  AR 76.  His wife woke him up between noon and 1:00 pm, and he watched their children between 2:00 pm and 4:00 pm.  He would then take a nap.  He sometimes tried to cook dinner, but did not wash the dishes.  He delegated household chores to his children.  AR 78.  He did not engage in any outside activities and had no hobbies.  AR 79.

Plaintiff had difficulty writing and reading, understanding questions and gathering his thoughts.  He suffered from depression and anxiety.  He could not sit for long periods of time and his legs went numb.  He could only stand comfortably for 15 minutes.  AR 80.  He felt sharp pains in his back that traveled down into his hip and left leg.  He could walk about 300 feet before needing to stop and rest.  He had difficulty going up and down stairs, and reaching above his head with his left arm.  AR 81.  He could not squat and had difficulty picking up items from the ground.  He sometimes used a cane.  He used a walker at home approximately one week a month.  AR 82.  Plaintiff testified that he showered about once or twice a month.  He changed his clothes infrequently.  He took Vanlafaxine, Gabapentin, Hydroxyzine, and Bupropion which made him feel groggy.  His medications also made him feel aggressive and he had unprovoked thoughts about physically harming loved ones.  AR 84.  He did not have any friends and did not leave his home very often. AR 85.

4

## 2.        Vocational Expert's Testimony

The vocational expert testified that Plaintiff's past work as a kiln burner helper was classified as medium work under the Dictionary of Occupational Titles ("DOT"). The job as performed by Plaintiff, however, was heavy work. AR 91. His past work as a process server was classified as light work, but was medium work as performed by Plaintiff. His past work in construction was comparable to that of a cement mason, which is classified as heavy work under the DOT. Plaintiff's work as a fast food service manager was classified as light work, but was medium work as performed by Plaintiff. AR 91-93.

The ALJ asked the vocational expert to assume a hypothetical individual of the same age, education, and background as Plaintiff. The individual could occasionally lift 100 pounds, frequently lift 50 pounds, sit or stand and walk for six hours of an eight hour day with no restrictions regarding forward bending at the waist, squatting, kneeling, reaching, pushing, pulling, grasping, or fine manipulation with the hands. The vocational expert testified an individual with these limitations could perform Plaintiff's past jobs. AR 93.

The ALJ next asked the vocational expert to assume an individual who could occasionally lift 20 pounds, frequently lift 10 pounds, and stand and sit for six hours. The individual could never climb ladders, ropes or scaffolds, but could frequently stoop, kneel, crouch, and crawl. The individual could not be exposed to hazards such as machinery or heights. The vocational expert testified that an individual with these limitations could perform Plaintiff's previous job as a process server. He would also be able perform Plaintiff's past job as fast food service manager as it is generally performed, but not as actually performed by Plaintiff. AR 94. The ALJ asked if there were other jobs available in the national economy that the individual could perform. The vocational expert testified that the individual could work as an inspector, hand packer, cleaner/ housekeeper, or router. AR 99. The vocational expert acknowledged, however, that the jobs of inspector, hand packer, cleaner/housekeeper, and router required bilateral use of extremities. These jobs would be eliminated if the individual could not use his left hand. AR 100. An individual with this additional limitation could, however, work as a counter clerk, election clerk, callout operator, or surveillance system monitor. AR 101.

Sedentary jobs would be eliminated, however, if the individual could not move from one task to another. AR 102.

The vocational expert testified that the hypothetical individual would not be able to perform any work if he would miss work two or more days per month, or would be off task fifteen percent or more of the workday. AR 95. All employment would be eliminated if the individual was unable to remember simple instructions, or maintain attention for two hour segments. AR 96. The individual would not be capable of working if he responded aggressively to instructions by a supervisor, was unable to socialize with coworkers, or lost track of conversations with supervisors or the public. AR 98.

### 3. Medical Records

Plaintiff was seen at Summerlin Hospital Medical Center on May 16, 2009. He presented with a one-month history of nausea and vomiting, and had vomited bright red blood that morning. He reported a history of depression, but denied suicidal thoughts. AR 405. An EGD was performed and showed antral ulcers with no active bleeding, and gastritis. AR 387-88. Plaintiff was treated in the Summerlin Medical Center emergency room on July 28, 2009 for abdominal pain, gastritis, and a sprained back. AR 449. A scan of his lumbar spine showed no abnormality. AR 456. Plaintiff was seen at the University Medical Center ("UMC") emergency department on October 28, 2010 for chest discomfort, which worsened with movement of his left arm. He also reported some nausea and vomiting. A chest x-ray showed no acute process and no ectopy. Plaintiff had some slight ST-segment sagging. AR 470. He rated his pain as 10/10 and described it as sharp, stabbing pain that was made worse by movement, and was accompanied by shortness of breath. He also reported a lot of anxiety, but denied any suicidal ideation or depression. He denied sleep problems or decreased appetite. AR 472. The doctor noted that his chest pain was likely acute in nature, with a possibility of costochrondritis (inflammation of the cartilage in the rib cage). AR 473.

Plaintiff was admitted to Summerlin Hospital on June 9, 2011 for left lower quadrant pain associated with diarrhea. He emphasized that he had back problems, as well as shaking, numbness and pain, off and on, on the left side of his body. He complained of blurred vision.

The physician noted that Plaintiff was in no acute distress, but was fairly nervous and appeared a little anxious. His EKG was normal. AR 479. Speech production and reading comprehension were within functional limits. AR 490. Plaintiff described his pain as 10/10, and as a burning on the left side. AR 491. He also complained of upper extremity weakness. AR 493. On June 12, 2011, Plaintiff reported a left side pain level of 7/10. AR 507. An MRI demonstrated multilevel degenerative disc disease, with disc height loss and desiccation at L3-L4, L4-5, and L5-S1. The degenerative changes were minimal, however, with no evidence of central canal or neuroforaminal stenosis. AR 520. A brain MRI was unremarkable. AR 523. Plaintiff was discharged on June 12, 2011, with a prescription for aspirin and Percocet.

Plaintiff was seen at the UMC emergency department on June 15, 2011 at the request of his primary care physician. Plaintiff had complained of numbness and difficulty speaking, and his doctor instructed him to go to the emergency room for a possible stroke. Plaintiff reported pain on the left side of his body, primarily at the neck and shoulder, and in the left hip. He also had a headache that resolved spontaneously. AR 588. Plaintiff had a normal mental status, and his sensory system was intact. He was neurologically intact. Laboratory studies were unremarkable. There was no focal neurological deterioration. There were no dynamic changes between previously performed CTs of his brain and his EKG. AR 589. The emergency department doctors reviewed Plaintiff's medical records and test results from Summerlin Hospital and determined that he did not require readmission or further workup. Plaintiff was instructed to follow-up with the neurological department and his primary care physician. AR 596-97.

Plaintiff was seen by Paul Nguyen, M.D at Harmony Healthcare for an initial evaluation on June 23, 2011. He reported a depressed mood, loss of interest or pleasure, low energy, change of appetite, difficulty sleeping, feeling worthless, difficulty concentrating, irritable mood, racing thoughts, lack of need for sleep, and being easily distracted. He denied suicidal thoughts. AR 625. Dr. Nguyen assigned a Global Assessment of Functioning ("GAF") score of 66. AR 624. Plaintiff reported having panic attacks, intense anxiety, fear of dying, excessive worrying, avoidance of others, tension, obsessive thoughts, history of trauma, easily startled, watches out

for danger excessively, and anger.  AR 626.  He reported engaging in aggressive behavior, such as being cruel to people, starting fights, bullying, and destroying property.  He often lost his temper, was defiant, and argumentative.  AR 627.  He was overly dependent, had an unrealistic fear of abandonment, extreme mood swings, and perfectionism.  He stated that he was a victim of childhood physical abuse and had memory problems.  AR 628.  Plaintiff reported weight loss/gain, energy loss, nausea, and vomiting.  AR 630.  Dr. Nguyen diagnosed mood disorder.  AR 635.  Plaintiff saw Dr. Nguyen on a monthly basis for depression and anxiety.  He was prescribed Prozac, Celexa, and Valium.  AR 616-21.  In November and December 2011, Plaintiff's mood swings were still present. On January 9, 2012, Dr. Nguyen noted that "life, job stressors might exacerbate his symptoms."  AR 616.

Plaintiff was seen at the Summerlin Medical Center emergency department for depression and suicidal thoughts on January 27, 2012.  AR 645.  He reported increasing thoughts of hurting himself or others.  His mood was withdrawn.  He had a recent life stressor of being unemployed.  AR 648.  He was noted to be irritable.  Plaintiff reported a history of poor impulse control with violence towards himself and others.  He admitted to punching himself and could not identify a deterrent to suicide.  AR 656.  He had become extremely volatile and was either going to hurt himself or somebody else.  AR 658.  It was determined that Plaintiff was not safe for discharge.  AR 656.

Plaintiff was transferred to Southern Nevada Adult Mental Health Services on January 29, 2012.  His GAF score on admission was 23.  AR 814.  He reported an issue with his wife about their marital relationship that made him angry and think of suicide.  He had images of being punched by his father.  He denied any thoughts of wanting to hurt himself or others.  AR 821.  Under initial observation, it was noted that Plaintiff "may need to be on a higher dose of mood stabilizer. It is not clear if he has PTSD or if he has a secondary gain to overreport symptoms to get disability."  AR 825.  On January 30th, Plaintiff stated that his wife was "playing mind games on me," and "I am not suicidal, she just thought I was."  AR 802.  He denied being depressed or suicidal from the outset.  He was discharged on January 31, 2012, and was deemed not to be a danger to himself or others.  He was given a GAF score of 72.  AR 813.

Plaintiff returned for treatment at Southern Nevada Adult Mental Health Services on February 2, 2012. He reported having better energy and motivation. He denied difficulty sleeping, depression, or hopelessness. He also denied suicidal ideation, aggression, or homicidal ideation. AR 807. Plaintiff was diagnosed as stable with lingering anxiety and depression, and was referred to begin counseling. AR 806. On April 12, 2012, Plaintiff stated that he felt that he was not improving in regard to irritability and being short tempered. He felt that medications were not helping him anymore and that he was difficult to be around. AR 799. On June 29, 2012, Plaintiff reported that he stopped taking lithium after 2 weeks because it caused nausea and vomiting. He reported mood swings and irritability. AR 795. On August 23, 2012, Plaintiff reported some improvement. His main concern was irritability and he stated that he stayed away from his family for that reason. AR 788. He had poor concentration and stated that he "sit[s] all day with a blank mind. I need to be told what to do." AR 787. On January 30, 2013, he reported that his depression improved with the increase of Prozac at his last visit. He noticed, however, that he was sleeping more than usual. AR 781. On May 15, 2013, it was noted that Plaintiff was stable and reported improvement with his depressed mood. AR 779.

On October 16, 2012, Plaintiff went to the Summerlin Medical Center emergency department for complaints of back pain. He was prescribed pain medication, cyclobenzaprine and hydrocodone-acetaminophen, and was discharged. AR 696-709. On December 10, 2012, Plaintiff was admitted to Summerlin Medical Center for facial pain after he was assaulted in a park. He stated that he was punched and kicked several times. AR 732.

Dr. Jerrold M. Sherman performed an orthopedic examination and evaluation of the Plaintiff at the request of the Bureau of Disability Adjudication on March 4, 2013. AR 764-769. Dr. Sherman noted Plaintiff's reported history of neck, mid and low back pain, and the limited medical treatment that he received for those complaints. At the time of the examination, Plaintiff complained of constant neck pain, and numbness in the left arm from the shoulder to the fingertips. He also complained of constant low back pain which was aggravated by sitting, standing, walking, pushing, pulling or lifting. He complained of pain and numbness in the left leg from the hip to the toes. Plaintiff stated that he used a cane five days a week. AR 764-765.

He entered the examination room "leaning heavily on a cane which is new in appearance and is not required in order to ambulate in the office." Plaintiff declined to walk on his heels and toes or perform any squatting maneuver. However, "[h]e gains the examining table easily and sits up from lying position without difficulty." AR 765. Dr. Sherman's physical examination findings were generally normal or unremarkable. AR 765-766. He opined that Plaintiff was able to sit, stand and walk for six hours during the course of an eight-hour day, and did not require a cane, brace, or assistive device to ambulate. Plaintiff could frequently lift 50 pounds, and occasionally lift 100 pounds. AR 767. Dr. Sherman completed a residual functional capacity checklist which was consistent with his report opinion. AR 768-769. He noted in large capital letters that Plaintiff's behavior during the examination was "MANIPULATIVE." AR 769.

Dr. L.D. Larson performed a consultative psychological examination of Plaintiff at the request of the Bureau of Disability Adjudication on March 28, 2013. AR 771-77. Dr. Larson opined that Plaintiff was functioning in the average range of intellectual ability and had sufficient general cognitive ability to carry out an extensive variety of complex tasks. He also had the functional ability to understand, remember, and carry out detailed instructions, as well as to understand, remember, and carry out simple one or two step instructions. However, physical concerns and secondary emotional distress would interfere with Plaintiff's capacity to work. AR 774-75. In regard to whether Plaintiff could interact appropriately with supervisors, coworkers and the public, Dr. Larson noted that he was cooperative and expressive during the examination. He reported excessive pain and physical discomfort, however, which would interfere with his ability and desire to socialize. He was often feeling depressed and anxious. Notable gaps were observed in his speech during which he would lose track of the conversation. Dr. Larson stated that all of these issues would diminish Plaintiff's ability to socialize appropriately in a typical work setting. AR 775. Dr. Larson stated that Plaintiff demonstrated adequate concentration on mental status examination ("MSE"), particularly on digit span trials, alphanumeric counting, and short-term and delayed recall. His short-term memory was judged to be excellent. He understood the meaning of various vocabulary words and could provide a common-sense answer to comprehension probes. Dr. Larson stated that despite performing well

on MSE tasks, "he would lose track of his thoughts easily while talking and would have lengthy pauses while speaking. . . . His physical and emotional symptoms would cause him to be highly intolerant of work-setting stressors." AR 775. Under prognosis, Dr. Larson stated that Plaintiff was primarily reporting disability due to his physical condition. She recommended that Plaintiff be referred to an appropriate medical specialist to determine the degree of disability associated with his physical concerns. AR 776.

Dr. Paula Kresser, a non-examining state agency psychologist completed a disability mental determination on September 6, 2013. She stated that Plaintiff's treating psychiatrist noted that Plaintiff was stable and reported improvement since the increase in Prozac medication. Dr. Kresser stated that the evidence did not support the degree of limitations alleged; that Plaintiff's treating doctor was pleased with his progress and that Plaintiff did not report any significant residual limitations. AR 148-49. State agency medical doctor, Michael Peril stated on September 9, 2013 that Plaintiff's limitations appeared to be exaggerated and were not supported by the objective evidence in the file. AR 150. He noted, for example, that Plaintiff and his wife "report[ed] severe neurological compromise requiring the use of adult diapers." However, observations and the objective medical studies, including labs and MRIs, did not support this claim. AR 150.

Plaintiff was seen by Robert Musni, M.D. on October 9, 2013 for his physical complaints. He complained of chronic neck and back pain associated with major depression and anxiety. AR 870. He reported that he had little interest in doing things, felt down or depressed, had trouble falling asleep, felt tired, had a poor appetite or was overeating, felt bad about himself, had trouble concentrating, and moved or spoke slowly nearly every day. He reported that these problems made it extremely difficult for him to do work, take care of things at home, and get along with others. AR 873.

An initial psychiatric evaluation of Plaintiff was performed on December 12, 2013 at Harmony Healthcare. AR 887-900. It was noted that Plaintiff has significant memory loss and inability to stay on topic. Plaintiff treated with Derald Farrimond., M.D., from January 29, 2014 to September 18, 2014. On February 26, 2014, Plaintiff reported being "well in general." AR

11

907.  He still had episodes from time to time, became frustrated, and felt like he was always sick.
He felt anxious and did not want to be around others.  He was alert and oriented.  AR 906.  On
June 26, 2014, Plaintiff stated that he was trying to "cope with things," and that he felt that his
medication was working well.  Dr. Farrimond noted that Plaintiff was alert and oriented.
Plaintiff did not have passive or active suicidal ideation, paranoia, or delusions.  AR 904.

On July 24, 2014, Plaintiff stated that he was feeling a little better.  He was waking up
earlier, but had less energy in the afternoon.  He was not having as many irritating or angry
thoughts.  AR 903.  He was feeling "somewhat better" on August 21, 2014.  AR 880-81.
Plaintiff was dealing with problems in the past.  He felt that he had more energy, but got tired
later in the day.  AR 902.  On September 18, 2014, Plaintiff reported that he was "not too bad,"
but had anxiety about being around others.  He was alert and oriented, and did not have
hallucinations, paranoia, or delusions.  AR 901.

Dr. Farrimond completed a medical source statement on October 28, 2014.  AR 931-37.
He diagnosed Plaintiff  as having depression and anxiety.  Plaintiff was prescribed Wellbutrin
XL, Effexor, Vistaril, and Risperdal.  "[P]ossible sedation" was a side effect of the medication.
Plaintiff had a dysphoric mood and a low restricted affect.  AR 931.  Plaintiff had anhedonia
(pervasive loss of interest in almost all activities), decreased energy, thoughts of suicide, blunt or
inappropriate affect, feelings of guilt or worthlessness, generalized persistent anxiety, difficulty
thinking or concentrating, psychomotor agitation or retardation, persistent disturbances of mood
or affect, and emotional withdrawal or isolation.  AR 932.  Plaintiff was seriously limited in the
ability to ask simple questions or request assistance, or to be aware of normal hazards and take
appropriate precautions.  He was unable to meet competitive standards to remember work-like
procedures, understand, remember or carry out very short and simple instructions, maintain
attention for two hour segments, maintain regular attendance and be punctual, sustain an
ordinary routine without special supervision, work in coordination with or proximity to others
without being unduly distracted, make simple work-related decisions, perform at a consistent
pace without an unreasonable number and length of rest periods, accept instructions and respond
appropriately to criticism from supervisors, get along with co-coworkers or peers without unduly

12

distracting them or exhibit behavior extremes, respond appropriately to changes in routine work setting, and deal with normal stress. Plaintiff had no useful ability to complete a normal workday and work week without interruptions from psychologically based symptoms. AR 933.

Under mental abilities and aptitudes for semiskilled or skilled work, Plaintiff was unable to meet competitive standards to understand, remember, and carry out detailed instructions, set realistic goals, and deal with the stress of semiskilled and skilled work. For particular types of jobs, he was unable to meet competitive standards to interact appropriately with the general public, maintain socially appropriate behavior, travel in unfamiliar places, or use public transportation. Plaintiff, however, did not have a low IQ or reduced intellectual functioning. AR 934. Dr. Farrimond stated that Plaintiff would find numerous demands of work to be stressful, and he would be absent from work more than four days per month. AR 935.

### C. The ALJ's Decision

The ALJ applied the five-step sequential evaluation process established by the Social Security Administration, 20 CFR § 416.920(a), to determine whether Plaintiff was disabled. AR 40-41. She found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of his application. At step two, she found that Plaintiff had the following severe impairments: degenerative disc disease and affective disorder. AR 43. At step three, the ALJ found that Plaintiff's impairment did not meet or was not the medical equivalent to any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d), § 404.1525 and § 404.1526, § 416.920(d), § 416.925, and § 416.926).

Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567 and 416.967(b). Specifically, he could lift up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to 6 hours in an 8 hour workday, and sit for up to 6 hours in an 8 hour workday. Plaintiff could never climb ladders, ropes, or scaffolds. He could frequently stoop, kneel, crouch and crawl. He was required to avoid exposure to hazards such as machinery or heights, and he could only occasionally engage in contact with co-workers and supervisors. AR 44.

13

In support of her RFC assessment, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. Although Plaintiff described daily activities that were fairly limited, his daily activities could not be objectively verified with any reasonable degree of certainty and it was difficult to attribute the degree of limitation to Plaintiff's medical condition in view of the relatively weak medical evidence. She found that the objective clinical findings did not support the extreme limitations alleged by Plaintiff. AR 45.

Plaintiff's psychiatric evaluation by S. Shon, M.D. at Harmony Health in July 2011 showed a normal mental status evaluation with the exception of depressed mood and sad affect. The ALJ noted that Dr. Nguyen's progress notes through January 2012 showed relatively normal and stable mental status examinations. AR 47. Although Plaintiff was admitted to the emergency department due to suicidal thoughts after an incident with his wife, Plaintiff was ultimately discharged from Southern Nevada Adult Mental Health Services with a GAF score of 72. His progress notes through August 2012 indicated that Plaintiff's mental condition was stable with the exception of irritability symptoms. The ALJ further noted that the progress notes through May 2013 indicated improvements with Plaintiff's mood and that his medication was helping with his symptom of irritability. AR 47.

The ALJ discussed Dr. Larson's consultative examination in March 2013 during which Plaintiff reported that he was unable to work primarily due to physical impairments. Plaintiff demonstrated a normal mental status examination except for slow speech. Dr. Larson diagnosed Plaintiff with a mood and anxiety disorder due to a general medical condition. A mental status examination performed in early 2014 was "entirely normal with the exception of mild anxiety." AR 47. The ALJ found that Plaintiff continued to demonstrate relatively normal mental status through September 2014 with reported exacerbations only with increased stressors at home. The ALJ stated that "[u]ltimately, . . . the medical record contains a considerable number of findings on clinical examination that the undersigned finds inconsistent with the claimant's allegation of an inability to perform any sustained work activity." The ALJ also stated that "[Plaintiff's] credibility is further undermined by the diagnostic and other objective medical evidence, which

conspicuously fails to show a physiological basis for the extreme pain and limitation alleged." AR 48.

The ALJ found that Plaintiff did not receive the type of treatment one would expect for a totally disabled individual. There were significant gaps in the treatment history which suggested that his symptoms were not as serious as alleged. The ALJ also noted inconsistencies between Plaintiff's and his wife's statements about symptoms he was experiencing and the medical records which negated such symptoms. The ALJ noted Plaintiff's use of a cane which Dr. Sherman stated was unnecessary, and inconsistent statements regarding Plaintiff's consumption of alcohol. AR 47-49.

The ALJ further stated:

> The record includes evidence from multiple physicians strongly suggesting that the claimant has exaggerated symptoms and limitations. As noted above, claimant's effort was described as "lackadaisical" during the orthopedic consultative evaluation. Moreover, mental health practitioners in January 2011 questioned the authenticity of the claimant's allegations noting that it was unclear if the claimant was "overreport[ing] his symptoms to get disability." Ultimately, given lack of objective support for his allegations, and the inconsistencies throughout the record, the evidence of symptoms magnification and malingering has weighed unfavorably against the claimant.

AR 49.

In regard to the medical opinion evidence, the ALJ accorded some weight to the opinions of Dr. Sherman, but found that he did not adequately consider Plaintiff's subjective complaints and did not have the opportunity to review other medical evidence in the record. The ALJ afforded substantial weight to the opinion of state agency reviewing physician, Dr. Peril regarding Plaintiff's residual functional capacity, because his opinion was consistent with the objective medical evidence.

The ALJ afforded little weight to the opinion of state agency psychologist, Dr. Kresser, who stated that Plaintiff's mental impairments were non-severe, because the evidence clearly demonstrates the presence of a severe mental impairment. AR 50. The ALJ also afforded little weight to the opinion of Plaintiff's treating physician, Dr. Farrimond. The ALJ noted that his

15

progress notes did not support his opinion regarding the severity of Plaintiff's mental impairments. Dr. Farrimond's progress notes were also quite cursory and the symptoms indicated in his opinion never appeared once in several years of progress notes. Instead, the mental status examination findings documented by Dr. Farrimond indicated that the Plaintiff was relatively stable. Overall, Dr. Farrimond's assessment was inconsistent with the bulk of the medical records. AR 50. The ALJ further noted that although Plaintiff's assigned GAF score fluctuated, the scores remained relatively stable between 60-65 indicating mild symptoms and functional limitations. She gave only some weight to the significance of the GAF scores because they were not a specific assessment of the nature and severity of Plaintiff's impairments. AR 50.

Based on her determination of Plaintiff's residual functional capacity and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work. She found at step five, however, that Plaintiff could perform the jobs of inspector, hand packager, and cleaner/housekeeping. The ALJ concluded, therefore, that Plaintiff was not under a disability from June 1, 2011 through the date of the decision. AR 52.

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d

864, 871 (9th Cir. 2000) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)); *see also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II. Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that: (a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform a significant

number of other jobs that exist in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007). Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). The ALJ correctly set forth five steps in her decision and they will not be repeated here.

### III. Whether the ALJ Erred in Rejecting Dr. Farrimond's Opinion.

Plaintiff argues that the ALJ erred by failing to provide specific and legitimate reasons for rejecting Dr. Farrimond's opinion. The Commissioner argues that substantial evidence supports the ALJ's findings, and that she properly assigned little weight to Dr. Farrimond's opinion in light of its brevity, the lack of support for the opinion in Dr. Farrimond's own progress notes, and its inconsistency with the record as a whole.

Under the standards in effect when Plaintiff's claim was adjudicated, more weight should generally be given to the opinion of a treating physician than to those of physicians who do not treat the claimant. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of an examining physician is also generally entitled to greater weight than that of a reviewing physician. *Id.*, at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The weight afforded to a reviewing physician's opinion depends on the degree to which he provides a supporting explanation for his opinions. *Id.* If a treating or examining physician's opinion is contradicted by another doctor's opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence. "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight ... even if it does not meet the test for controlling weight.'" *Garrison*, 759 F.3d at 1012 (quoting *Orne v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

The ALJ, however, is not bound by a treating physician's opinion that a claimant is disabled. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). While a treating physician's evaluation of a patient's ability to work may be useful in the disability determination, a treating

18

physician ordinarily does not consult a vocational consultant or have the expertise of one. "An impairment is a purely medical condition. A disability is an administrative determination of how an impairment in relation to education, age, technological, economic, and social factors, affects the ability to engage in gainful activity." The law reserves the disability determination to the Commissioner. *Id.* at 884 (citing 20 C.F.R. § 404.1527(e)(1)).

In rejecting Dr. Farrimond's opinion, the ALJ stated that it was not supported by his own progress notes, and that the notes, themselves, were cursory. The ALJ also found that his opinion was inconsistent with the bulk of the objective evidence of the record. AR 50. An ALJ may discredit a treating physicians' opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). As the ALJ noted, the medical evidence showed that from approximately July 2014 to September 2014, Plaintiff's mood was improved, with the exception of feeling tired later in the day, and being anxious around others. AR 880-901. In addition, Dr. Farrimond's mental status examinations consistently noted that Plaintiff was alert, oriented, did not have suicidal ideations, paranoia, or delusions. Plaintiff reported exacerbations of symptoms only with increased stressors at home with his wife and other family members. AR 48. Because Dr. Farrimond's opinion was not supported by his own progress notes or clinical findings, the ALJ was not required to give it controlling weight. The record also supported the ALJ's determination that Plaintiff was exaggerating his symptoms and was possibility attempting to manipulate his medical providers to obtain disability benefits. This was an additional reason to reject Dr. Farrimond's opinion which appears to have been based primarily on Plaintiff's subjective symptoms. The ALJ, therefore, provided specific and legitimate reasons for rejecting Dr. Farrimond's opinion regarding the severity of Plaintiff's mental impairments and limitations.

### IV. Whether the ALJ Properly Evaluated Dr. Larson's Opinion.

Plaintiff argues that the ALJ failed to state what, if any, weight she gave to Dr. Larson's opinion. He further argues that Dr. Larson's opinion appears to be work preclusive. The Commissioner argues that there was no reversible error because the ALJ discussed Dr. Larson's opinion and found it to be primarily based on physical rather than psychological issues, and

provided specific reasons for rejecting Dr. Larson's GAF assessment. The Commissioner also argues that any error was harmless because Dr. Larson did not opine that Plaintiff had functional limitations that exceeded those found by the ALJ in her assessment.

The ALJ's failure to expressly state what weight she gave to Dr. Larson's opinion does not require reversal under the facts of this case. As the ALJ noted, Dr. Larson found that Plaintiff had a normal mental status examination except for slow speech. She opined that Plaintiff had a "Pain disorder associated with both psychological factors and a general medical condition chronic and severe," in addition to a mood and anxiety disorder "due to general medical condition." Dr. Larson gave Plaintiff a GAF score of 49 due to physical impairments or "medical concerns." Dr. Larson also noted Plaintiff's statement that he was unable to work primarily due to physical impairments. AR 47. Dr. Larson stated that although Plaintiff had the general cognitive ability to perform a variety of work tasks, his physical and emotional symptoms would interfere with his capacity to work. AR 775. She recommended that Plaintiff be referred to an appropriate medical specialist to determine the degree of disability associated with his physical symptoms.[1] AR 776.

"An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "In other words, in each case we look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* The ALJ erred in not specifically addressing the weight that should be accorded to Dr. Larson's opinion. It is reasonable to infer, however, that the ALJ accorded little or no weight to Dr. Larson's qualified opinion that Plaintiff's emotional distress would interfere with his capacity to work. (Dr. Larson did not opine that Plaintiff was unable to work.) The record, as a whole, contained substantial evidence to support the ALJ's determination that Plaintiff was able to perform light work with the additional limitations set forth in his residual functional capacity assessment.

---

[1] Dr. Larson was presumably unaware that Plaintiff was examined by Dr. Sherman on March 4, 2013, who found that Plaintiff had generally normal physical findings and was engaging in manipulative behavior.

## CONCLUSION

The ALJ provided specific and legitimate reasons for rejecting Dr. Farrimond's opinion and for inferentially rejecting Dr. Larson's opinion that Plaintiff's emotional or mental stress would interfere with his ability to work. Accordingly,

## ORDER

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reversal and/or Remand (ECF No. 19) is **denied** and the Commissioner's Cross-Motion to Affirm (ECF No. 22) is **granted**.

Dated this 19th day of July, 2019.

_George Foley Jr._
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**